UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

MICHAEL KARIBIAN,

       Plaintiff,                    Case No. 06-14989

vs.                                DISTRICT JUDGE PAUL V. GADOLA
                                  MAGISTRATE JUDGE STEVEN D. PEPE

VILLAGE GREEN MANAGEMENT COMPANY,
VILLAGE GREEN COMMUNICATIONS, INC.,
VILLAGE GREEN RESIDENTIAL PROPERTIES, L.L.C., A/K/A
VILLAGE GREEN COMPANIES, AND JONATHAN HOLTZMAN,

       Defendants.
_____/

**REPORT AND RECOMMENDATION
ON SUMMARY JUDGEMENT MOTION (Dkt. # 12)**

**I.    PROCEDURAL HISTORY**

On July 25, 2007, Village Green Management Company, Village Green Communications, Inc., Village Green Residential Properties, L.L.C., A/K/A Village Green Companies, and Jonathan Holtzman, (collectively, "Defendants")[1] filed a "Motion for Summary Judgment" against Plaintiff, Michael Karibian (Dkt. # 12). On August 27, 2007, Plaintiff filed a response (Dkt. # 15), and on September 4, 2007, Defendants replied to the response (Dkt. # 17). Plaintiff's suit was originally filed in state court, but Defendants removed the federal claim to this Court on November 6, 2006 (Dkt. # 1). Pursuant to 28 U.S.C. § 636(b)(1)(B), this motion was referred to the undersigned on October 29, 2007 (Dkt. # 18). For the following reasons, **IT**

---

[1]Village Green Management Company, Village Green Communications, Inc., Village Green Residential Properties, L.L.C., A/K/A Village Green Companies will be referred to collectively as "Village Green."

**IS RECOMMENDED** that Defendant's motion (Dkt. # 12) be **GRANTED**.

## II. BACKGROUND FACTS

### A. Alleged Cause of Action

As set forth in Defendant's Motion for Summary Judgment, Defendant is a conglomerate involved in large-scale real estate developments (Dkt. # 12, p. 2). Plaintiff, Michael Karibian was Chief Financial Officer ("CFO") of Village Green from June 2005, until September 26, 2006, when he was offered the choice to resign or be fired (Dkt. # 12, p. 16). Subsequently, Plaintiff filed suit in state court seeking severance payments. Plaintiff's federal claim, under the Family Medical Leave Act ("FMLA") is the only claim before this Court. 29 U.S.C.A. §§ 2601 *et. seq.*

The parties agree that Plaintiff was hired in the June/July 2005 time period, and that he was give the choice to quit or be fired in September 2006 (Dkt. # 12, Ex. 2, p. 39-40). Disagreement centers on why Plaintiff was fired. Defendants assert that Plaintiff's deficient job performance, as well as his being an "at will employee" for Village Green, was the reason he was let go. To bolster that claim, Defendants document Plaintiff's alleged failures managing staff, accurately reporting data and preparing for board meetings (Dkt. # 12, p. 3, 4, 7). Plaintiff acknowledges that "there were concerns about the quality of one of my departments" and that he was terminated because the board was "unhappy with my performance" (Dkt. # 12. Ex. 2, p. 68:2-4, 187:2-3).

Plaintiff avers that concerns about his job performance were pretext for the real reason why he was fired: Defendants unsuccessful efforts to demote and then terminate a pregnant

employee[2] in violation of the FMLA (Dkt. # 15, p. 1). Specifically, Plaintiff alleges that he was fired for "unsuccessfully interfering with the employee's FMLA rights." *Id.* As such, Plaintiff alleges that he was subject to retaliation under 29 U.S.C. § 2615(a)(2) of the FMLA (Dkt. # 15, p. 13). 29 U.S.C. § 2615(a)(2) states that "it shall be unlawful for any employer to discharge or in any other manner discriminate against any individual for opposing any practice made unlawful by this subchapter." 29 U.S.C. § 2615(a)(2). Plaintiff argues that he was discriminated against for his opposition to the firing of Ms. Sigmond.

### III. ANALYSIS

#### A. The Legal Standards

##### 1. Summary Judgment:

Under Fed. R. Civ. P. 56, summary judgment is to be entered if the moving party demonstrates there is no genuine issue as to any material fact. The Supreme Court has interpreted this to mean that summary judgment should be entered if the evidence is such that a reasonable jury could find only for the moving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986). The moving party has "the burden of showing the absence of a genuine issue as to any material fact." *Adickes v. S. H. Kress & Co.*, 398 U.S. 144, 157 (1970). *See also Lenz v. Erdmann Corp.*, 773 F.2d 62 (6th Cir. 1985). In resolving a summary judgment motion, the Court must view the evidence in the light most favorable to the non-moving party. *See Duchon v. Cajon Co.*, 791 F.2d 43, 46 (6th Cir. 1986); *Bouldis v. United States Suzuki Motor Corp.*, 711 F.2d 1319 (6th Cir. 1983). But as the Supreme Court wrote in *Celotex Corp. v. Catrett*, 477 U.S.

---

[2] Ms. Debbie Sigmond.

3

317, 322-23 (1986):

> [T]he plain language of Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial. In such a situation, there can be "no genuine issue as to any material fact," since a complete failure of proof concerning an essential element of the non-moving party's case necessarily renders all other facts immaterial. The moving party is "entitled to a judgment as a matter of law" because the non-moving party has failed to make a sufficient showing on an essential element of her case with respect to which she has the burden of proof.

Moreover, when a motion for summary judgment is filed, the adverse party may not merely rely "upon the mere allegations or denials of the adverse party's pleading, but . . . by affidavits or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial." Fed. R. Civ. P. 56(e).

### 2. *FMLA:*

Due to concerns that employers might try to prevent employees from exercising the rights and benefits provided under the FMLA, the Act allows for two types of claims: interference claims,[3] whereby an employee asserts a denial or interference with their substantive rights under the FMLA; and retaliation claims, asserting that the employer discriminated against an employee because he or she engaged in activity protected by the Act.[4] Plaintiff is asserting the latter claim. Under the FMLA, claims of retaliation must be demonstrated by either direct or circumstantial evidence of retaliation. *Fountain v. Wellpoint, Inc.,* No. 1:06-CV-098, 2007 U.S. Dist. LEXIS 51658, at *23 (S.D. Ohio July 17, 2007). In this circuit, employees asserting an

---

[3] 29 U.S.C. § 2615(a)(1).

[4] 29 U.S.C. § 2615(a)(2).

4

indirect retaliation claim under FMLA must utilize the *McDonnell-Douglas* burden-shifting test. *See McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973); *See also Skrjanc v. Great Lakes Power Serv. Co.*, 272 F.3d 309, 313-16 (6th Cir.2001) (applying the *McDonnell-Douglas* analysis to a retaliation claim under the FMLA). Under *McDonnell-Douglas*, the plaintiff must first prove a *prima facie* case of discrimination or retaliation by a preponderance of the evidence. *McDonnell Douglas Corp.*, 411 U.S. at 802. Proving a *prima facie* requires that Plaintiff show: "(1) he or she availed himself or herself of a protected right under the FMLA; (2) he or she was adversely affected by an employment decision; and (3) there was a causal connection between the employee's protected activity and the employer's adverse employment action." 190 A.L.R. Fed. 491: § 2[A]. *See Walton v. Ford Motor Co.*, 424 F. 3d 481 (6th Cir. 2005); *Moorer v. Baptist Memorial Health Care System*, 398 F.3d 469 (6th Cir. 2005); *See also Mitchell v. Dutchmen Mfg., Inc.*, 389 F.3d 746 (7th Cir. 2004) (Failure to satisfy any one element of the *prima facie* case dooms an employee's retaliation claim under the FMLA.).

If an employee makes a *prima facie* showing, the burden shifts to the employer to articulate a legitimate, non-retaliatory reason for its employment decision. *McDonnell-Douglas* at 802-04. This burden is not onerous. *See Texas Dep't of Cmty. Affairs v. Burdine*, 450 U.S. 248, 256, 101 S.Ct. 1089, 67 L.Ed.2d 207 (1981) (Defendant "need only produce admissible evidence which would allow the trier of fact rationally to conclude that the employment decision had not been motivated by discriminatory animus."); *Ercegovich v. Goodyear Tire & Rubber Co.*, 154 F. 3d 344, 350 (6th Cir.1998). Defendants can satisfy this burden by "clearly set[ting] forth, through the introduction of admissible evidence, the reasons for the [adverse employment actions]." *Burdine* at 253, 255.

If the employer satisfies its burden of production, then the plaintiff must demonstrate that the articulated reason is pretext offered to mask its discrimination. *McDonnell-Douglas*. at 804-06. A plaintiff may show pretext by demonstrating that the employer's justification: "(1) had no basis in fact; (2) was insufficient motivation for the employment action; or (3) did not actually motivate the adverse employment action." *Joostberns v. United Parcel Serv.*, 166 Fed. Appx. 783, 790-91 (6th Cir. 2006).

With regard to retaliation claims, this circuit has held, in Title VII [5] cases, that opposition claims of retaliation receive less protection than do participation claims of retaliation. *Booker v. Brown and Williamson Tobacco Co.*, 879 F.2d 1304, 1313 (6th Cir. 1989). However,

> generally the anti-retaliation provision in Title VII of the Civil Rights Act of 1964 has been interpreted to prohibit retaliation against an employee who makes a reasonable, good-faith claim that wrongful discrimination has occurred, even if the claim ends up being meritless; opposition to an employment practice is protected when it is based on a reasonable belief that the employer has engaged in an unlawful employment practice.

---

[5] The anti-retaliation sections of Title VII and the FMLA are similar, and are treated as analogous. § 2000e-3(a) of Title VII reads: "It shall be an unlawful employment practice for an employer to discriminate against any of his employees or applicants for employment, for an employment agency, or joint labor-management committee controlling apprenticeship or other training or retraining, including on-the-job training programs, *to discriminate against any individual,* or for a labor organization to discriminate against any member thereof or applicant for membership, *because he has opposed any practice made an unlawful employment practice by this subchapter,* or because he has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this subchapter." (Emphasis added.) 29 U.S.C. 2615(a)(2) of the FMLA reads: "It shall be unlawful for any employer to discharge or in any other manner discriminate against any individual for opposing any practice made unlawful by this subchapter." The companion FMLA regulations, 29 C.F.R. § 825.220(a)(2), read: "An employer is prohibited from discharging or in any other way discriminating against any person (whether or not an employee) for opposing or complaining about any unlawful practice under the Act."

AMJUR JOBDISCRIM § 222.

In a Title VII suit, in order to argue a retaliation claim one must engage in "active, consistent 'opposing' activities to warrant § 2000e-3(a) protection." *Bell v. Safety Grooving & Grinding, LP.*, 107 Fed. Appx. 607 (6th Cir. 2004). Further, this circuit has held that "that a vague charge of discrimination in an internal letter or memorandum is insufficient to constitute opposition to an unlawful employment practice." *Booker*, 879 F. 2d at 1313. *See Johnson v. University of Cincinnati*, 215 F.3d 561, 575 (6th Cir. 2000) (holding that Title VII protections applied to an official who engaged in significant advocacy on behalf of individuals protected by Title VII.); *See also Rainier v. REFCO, Inc.*, 464 F. Supp. 2d 742 (S.D. Ohio 2006) (noting that Title VII cannot be construed to protect persons who engaged in no protected activity from being retaliated against.).

### B. **Factual Analysis**

#### 1. *Prima Facie Case:*

In order to prove a *prima facie* case of discrimination Plaintiff must show: "(1) he or she availed himself or herself of a protected right under the FMLA; (2) he or she was adversely affected by an employment decision; and (3) there was a causal connection between the employee's protected activity and the employer's adverse employment action." 190 A.L.R. Fed. 491: § 2[A]. In the present case, while Plaintiff can prove factor (2), he is unable to satisfy factors (1) or (3) of this test.

##### A. Protection under the FMLA:

In this suit, Plaintiff is in the unusual position of seeking protection under the FMLA even though he never actually sought medical leave under the Act. In fact, Plaintiff avers that he

"was fired for unsuccessfully interfering with another employee's FMLA rights"[6] (Dkt. # 15, p. 1). Until filing this suit, Plaintiff never availed himself of the rights afforded under the FMLA. It is undisputed that upon Ms. Sigmond her return from maternity leave, Village Green sought to demote and then fire Ms. Sigmond. Plaintiff did not oppose these actions, but rather "was a good corporate citizen in working to communicate to her what her options were" (Dkt. # 12, p. 195:7-8). In his deposition testimony, Plaintiff never expressed any concerns about an FMLA violation, and in fact stated that he "didn't object" to the corrective actions taken against Ms. Sigmond, but rather followed the directives "as they were given to me" (Dkt. # 12, Ex. 2: p. 196:7, 195:21-22).

Plaintiff's actions as a "good corporate citizen" included his following instructions given to him by George Quay IV, Village Green's Chief Operating Officer, to document Ms. Sigmond's performance issues that "will result in additional changes to her position including termination" (Dkt. # 15, Ex. A 1/9/06 email). As noted in his Reply, "Plaintiff obeyed Quay's instructions." *Id.* At 4.

Plaintiff alleges that he objected to the demotion of Ms. Sigmond by speaking with his superiors and trying to "educate and inform that the process or how they were doing things could potentially lead them down a path that would cause some issue" (Dkt. # 12, Ex. 2, p. 195:7-10). Plaintiff also maintains that he "raised reasonable doubts and explained why we shouldn't or may not want to do it. But as you will see by the chain of e-mails in the various exhibits, I went

---

[6] For purposes of this suit, it does not matter whether Defendants, as Plaintiff asserts, violated the FMLA or whether Defendants sought Ms. Sigmond's firing prior to and independent of the pendency of any FMLA claim.

ahead and did what was..."[7] (Dkt. # 12, Ex. 2, p. 196:22-25).

Plaintiff's deposition testimony is the only documented instance suggesting that Plaintiff objected to Defendants' firing of Ms. Sigmond. Plaintiff did not document or formally register his concerns even though Village Green's Associate Handbook details a formal process for addressing workplace discrimination or harassment [8] (Dkt. # 12, Ex. 11, p. 8). On July 31, 2006, Plaintiff signed an acknowledgment form stating that it was his responsibility to "read, understand and follow" the handbook (Dkt. # 12, Ex. 10).

Even taken in a light most favorable to Plaintiff, his expressions of concern do not rise to the requisite level of "active, consistent" opposition to Defendants' actions regarding Ms. Sigmond. In fact, Plaintiff "followed the directives" given him (Dkt. # 12, Ex. 2, p. 195:21-22). It does not appear that Plaintiff even opposed Defendants' employment action. Plaintiff's concerns that "some issue" might arise or that "there were reasonable doubts" suggest an interest in business tactics, and do not evince concern "for opposing any practice made unlawful" by the FMLA. *See* 29 U.S.C. 2615(a)(2). At no time did Plaintiff reference, much less avail himself of, the FMLA.

This circuit is clear that "to succeed on FMLA retaliation claim, employee must demonstrate that his employer intentionally discriminated against him in form of adverse employment action for having exercised FMLA right." *Smith v. ACO, Inc.*, 368 F. Supp. 2d 721

---

[7] Exhibit does not include the subsequent page of Plaintiff's deposition that would complete the quote.

[8] Village Green's Associate Handbook states: "Complaint Procedure: Any associate who believes discrimination or harassment has occurred in the work place including, but not limited to sexual harassment, should report the act immediate, in writing if possible, after the harassment or discrimination occurs..."

(E.D. Mich. 2005). *See Lackey v. Jackson County, Tenn.*, 104 Fed. Appx. 483 (6th Cir. 2004); *Bukta v. J.C. Penney Co., Inc.*, 359 F. Supp. 2d 649 (N.D. Ohio 2004). In this case, Defendants had no way to know that Plaintiff was consistently and actively opposing actions in violation of the FMLA because he never articulated such a concern.

<u>B. Causal Connection Between Protected Activity and Adverse Employment Action:</u>

Similarly, Plaintiff has failed to provide evidence from which a reasonable fact finder could find a causal connection between the employee's protected activity and the employer's adverse employment action. Not withstanding Plaintiff's failure to show that he engaged in protected activity, there exists ample evidence to suggest that there was no connection between Plaintiff's allegedly protected actions and his subsequent dismissal.

Plaintiff argues that he was fired because he created "a tenuous situation" by not firing Ms. Sigmond earlier (Dkt. # 15, p. 7). This delay resulted in Defendants settling with her for a "large sum" of money. *Id.* at 1. Defendants argue that Plaintiff was fired solely due to his deficient performance which included their desire that he fire Ms. Sigmond prior to learning that she was pregnant (Dkt. # 12, p. 8).

Plaintiff's work record at Village Green was decidedly mixed. Plaintiff was characterized by his superiors as "obviously a hard worker" (Dkt. # 15, Ex. 3, p. 77:4-5), and received a merit pay increase (Dkt. # 15, Ex. 8). Yet, the record is every bit as damning regarding his work performance. In his deposition, Plaintiff acknowledged that as early as September/October 2005, the CEO had "concerns and was very vocal directly with people ... including myself" (Dkt. # 12, Ex. 2, p. 74:11-14). Likewise, Plaintiff admitted that Village Green's President "was unhappy with some of the people and the work that we produced out of

the department" (Dkt. # 12, Ex. 2, p. 68:6-8).  Even though he was awarded a bonus, Plaintiff's 2005 year end review provided him with a score of 24/100 (Dkt. # 12, Ex. 13).  The review stated:

> While obviously a hard worker, early situation of inaccurate information from the department have already impacted the Chairman's perception of Michael's abilities . . . . [H]is current load is lighter than supported by previous CFO's and if navigated correctly, could improve the existing perception and is necessary for continued functionality and production from this position without subsidization from outside consultants, HR, George or Jonathan. Not being proactive well in advance of the December Board Meeting resulted in a very embarrassing situation for the Company being nowhere ready to have that meeting ... Michael's Staff Development and Supervisor [sic] thus far has been significantly below requirements for the position. Failing to address Debbie Sigmond's issues early and appropriately have created a tenuous situation. Since Michael has been pulled from weekly Asset Manager Meeting, they have all voiced concern with the direction and lack of immediate CFO leadership/mentorship.

Dkt. # 12, Ex. 13.

Plaintiff signed this bonus statement on March 14, 2006.  The timing of this review was shortly after Ms. Sigmond returned to work.  Such timing may call into question the validity of the report, but Plaintiff, in his deposition, addressed this stating that "if I felt strongly that I didn't like the wording, I would have changed it" (Dkt. # 12, p. 87:11-13).  It is clear that Plaintiff has failed to establish a causal connection between his firing and the assertion of any FMLA rights.

Assuming, *arguendo*, that the facts before the Court established a causal connection between Plaintiff's assertion of his FMLA rights and his subsequent firing, Plaintiff's claim likely would fail because of the time gap between Plaintiff's timid assertion of his misgivings regarding Ms. Sigmond's rights and his subsequent firing.  *See Cooper v. City of Olmstead*, 795

F. 2d 1265 (6th Cir. 1986) (holding that firing four months after filing a discrimination complaint, does not establish a *prima facie* case of retaliatory discharge.). Ms. Sigmond began maternity leave in December 2005, returned to work in March 2006 and settled her claim with Defendants by April 2006. Plaintiff was fired on September 26, 2006. As such, there was at least a five month gap between resolution of Ms. Sigmond's treatment and Plaintiff's firing. Such a lapse does not rule out a causal connection between Plaintiff's protected actions and the subsequent firing, but given the time lag and continued reprimands of Plaintiff, the existence of such a causal connection is highly problematic.

Plaintiff never voiced any opposition to any FMLA violations, actual or otherwise. As such, Plaintiff cannot claim FMLA protection under 29 U.S.C. 2615(a)(2). Accordingly, Plaintiff has failed to state a *prima facie* case of discrimination under the FMLA, and must fail the first step of the *McDonnell-Douglas* analysis.

<u>C. Employer's Legitimate Non-Discriminatory Purpose:</u>

Once an employee satisfies the burden of showing discriminatory effect, the burden of production shifts to the employer to articulate a legitimate, nondiscriminatory reason for the adverse employment action. *Ercegovich v. Goodyear Tire & Rubber Co.*, 154 F.3d 344, 350 (6th Cir.1998). Assuming, against the weight of the evidence, that Plaintiff made out a *prima facie* showing of discrimination, the *McDonnell-Douglas* standard requires the employer to articulate a legitimate, non-retaliatory reason for its employment decision. To satisfy this burden, Defendants "need only produce admissible evidence which would allow the trier of fact rationally to conclude that the employment decision had not been motivated by discriminatory animus." *Texas Dept. of Community Affairs v. Burdine*, 101 S.Ct. 1089 (1981).

Defendants note that Plaintiff's shortcomings required that they hire outside professionals to do work traditionally under the purview of the CFO (Dkt. # 12, Ex. 10, ¶9). Plaintiff's errors and delays also affected the ability to provide the board with informational packets in advance of two board meetings. *Id.* at ¶6(j). Further, Plaintiff in his deposition admits receiving criticism about the work produced by his asset management team as well as his own work pace and product (Dkt. # 12, Ex. 2, p. 68:2-4, 109:22-25). These criticisms led Plaintiff to conclude "I am an at will employee. They were unhappy with my performance. And I was terminated" (Dkt. # 12, Ex. 2, p. 187:1-2).

With this evidence, Defendant has articulated significant evidence from which a jury could find a "legitimate, nondiscriminatory reason for the adverse employment action." *Ercegovich* 150 F.3d at 350 (6th Cir. 1998). Plaintiff's performance review, regular meetings with superiors and the reduction in Plaintiff's responsibilities provide a rational explanation for Plaintiff's dismissal and could lead a trier of fact "rationally to conclude that the employment decision had not been motivated by discriminatory animus." *Burdine* 450 U.S. at 257 (1981).

<u>D. Showing of Pretext:</u>

Once Defendants satisfy their burden of producing legitimate, non-retaliatory reasons for Plaintiff's subsequent termination, Plaintiff must demonstrate that the articulated reasons are mere pretext for unlawful discrimination. A plaintiff generally may show pretext by demonstrating that the employer's proffered reason: (1) had no basis in fact; (2) was insufficient motivation for the employment action; or (3) did not actually motivate the adverse employment action. *Joostberns v. United Parcel Serv.*, 166 Fed. Appx. 783, 790-91 (6th Cir.2006). Plaintiff is unable to meet this rebuttal burden.

It could be argued that both parties' filings and exhibits are in many ways an exercise in post-hoc justification. Many of Defendants documents arise upon Ms. Sigmond's return to work or immediately prior to Plaintiff's dismissal.[9] Given the timing, there is reason to doubt the veracity of these documents. Plaintiff suggests as much when he notes that Defendants were "papering the file to try to fire me" (Dkt. # 12, p. 152:13-14). Similarly, Plaintiff provides several e-mails, completely out of context, suggesting that they prove his competency and the existence of larger problems at Village Green (Dkt. # 15, p. 6). Sifting through the parties' posturing what is clear to any reasonable fact finder is : (1) the dissatisfaction with individuals and teams under Plaintiff's purview arose relatively soon after his arrival at Village Green and before the controversy around Ms. Sigmond began (Dkt. # 12, Ex. 2, p. 68). (2) Plaintiff signed a performance review that provided him with a small bonus, skewered his peformance and rated him 24/100 (Dkt. # 12, Ex. 13). Finally, Plaintiff admitted that he was terminated because Village Green was unhappy with his performance (Dkt. # 12. Ex. 2, p. 68:2-4, 187:2-3).

Given the number of incidents, their duration and the fact that Plaintiff was an at will employee, Plaintiff has failed to establish that Defendants lacked facts sufficient to justify his dismissal. As such, given the timid misgivings to Ms. Sigmond termination, the failure to articulate any FMLA concerns, and Plaintiff's lackluster employment performance, no reasonable fact finder could conclude that Defendants' reasons for dismissing him were mere pretext.

**IV.** **RECOMMENDATION**

Accordingly, for all of the above stated reasons, **IT IS RECOMMENDED** that Defendant's

---

[9]*See* Dkt. # 12, Exs. 24-27.

motion for summary judgment be **GRANTED**.  The parties to this action may object to and seek review of this Report and Recommendation, but are required to file any objections within ten (10) days of service of a copy hereof, as provided for in 28 U.S.C. § 636(b)(1) and E.D. Mich. LR 72.1(d)(2).  Failure to file specific objections constitutes a waiver of any further right of appeal.  *Thomas v. Arn*, 474 U.S. 140 (1985); *Howard v. Sec'y of Health and Human Servs.*, 932 F.2d 505 (6th Cir. 1991); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981).  Filing of objections which raise some issues but fail to raise others with specificity, will not preserve all the objections a party might have to this Report and Recommendation.  *Willis v. Sec'y of Health and Human Servs.*, 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n of Teachers Local*, 231, 829 F.2d 1370,1373 (6th Cir. 1987).  Pursuant to E.D. Mich. LR 72.1(d)(2), a copy of any objections is to be served upon this Magistrate Judge.

Within ten (10) days of service of any objecting party's timely filed objections, the opposing party may file a response.  The response shall be not more than twenty (20) pages in length unless by motion and order such page limit is extended by the Court.  The response shall address specifically, and in the same order raised, each issue contained within the objections.  If the Court determines any objections are without merit, it may rule without awaiting the response to the objections.


Dated: December 28, 2007                                  s/Steven D. Pepe
Flint, Michigan                                           United States Magistrate Judge

15

**CERTIFICATE OF SERVICE**

I hereby certify that a copy of the foregoing ***Report and Recommendation*** was served on the attorneys and/or parties of record by electronic means or U.S. Mail on December 28, 2007.

s/ Alissa Greer  
Case Manager to Magistrate  
Judge Steven D. Pepe  
(734) 741-2298